**ORAL ARGUMENT NOT SCHEDULED**

**UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

CONSERVATIVE BAPTIST ASSOCIATION OF AMERICA, Appellant,

v.

ROBERT MCDONALD, SECRETARY OF U.S. DEPARTMENT OF
VETERANS AFFAIRS, Appellee

———————————————
No. 14-5155
———————————————

Appeal from the United States District Court for the District of Columbia No. 1:13-
cv-01762-(JDB) The Honorable John D. Bates

_____

Brief of Plaintiff-Appellant Conservative Baptist Association of America

_____

John B. Wells
Attorney for Appellant
D.C. Cir. #54096
P. O. Box 5235
Slidell, LA 70469-5235
769 Robert Blvd. Suite 201D
Slidell, LA 70458
Phone: (985) 641-1855
Fax: (985) 649-1536
JohnLawEsq@msn.com

## STATEMENT REGARDING ORAL ARGUMENT

This case raises significant issues regarding the protection of the religious freedom rights of a non-profit corporation and its members under the Religious Freedom Restoration Act and their standing to bring suit to protect those rights. In consideration of these complex issues and the trial record, Appellant suggests that oral argument may be of some assistance to the Court. Accordingly, Appellant Conservative Baptist Association respectfully requests that oral argument be granted.

# TABLE OF CONTENTS

Certificate as to Parties, Rulings and Related Cases. . . . . . . . . . . . . . . . . . . . . . . iv

Statement Regarding Oral Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

Table of Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vi

Statement of Jurisdiction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . viii

Relevant Statutes and Regulations. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . viii

Statement of the Issues. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Summary of Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        Standard of Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

I.     CBAmerica has standing to raise a claim under the Religious Freedom Restoration Act (RFRA) because they were exercising the free expression of their religious beliefs within the scope of *Burwell v. Hobby Lobby Stores, Inc.,* 13-154, ___ U.S. ___, 134 S. Ct. 2751 (2014). . . . . . . . . . . . . . . . . . 7

II.    CBAmerica has standing to bring a declaratory judgment action. . . . . . . . . 13

III.   CBAmerica has standing to raise a claim on behalf of members Firtko and Klender (and consequently, whether Chaplains Firtko and Klender are members of CBAmerica). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

IV.   CBAmerica has suffered an injury in fact. . . . . . . . . . . . . . . . . . . . . . 22

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Certificate of Compliance.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Certificate of Service. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

## CERTIFICATE AS TO PARTIES, RULINGS AND RELATED CASES

Pursuant to Circuit Rule 28(a)(1), counsel for the Appellant files this

certificate as to parties, rulings, and related cases.

### I.   Parties

The Appellant in this matter is Conservative Baptist Association of America,

a juridical person, who was the plaintiff in the District Court.

The Appellee is Robert McDonald, in his official capacity as Secretary of

the Department of Veterans Affairs, who is substituted for Eric Shinseki, the

named defendant below due to Shinseki's resignation and Mr. McDonald's

confirmation as the new Secretary.  There are no amicus curiae known at this time.

### II.   Rulings Under Review

At issue in this appeal is the **May 16, 2014** Order and Memorandum

Opinion of the Honorable John D. Bates, granting defendant's Motion to Dismiss.

### III.   Related Cases

This case has not previously been before this Court and to the best of

Appellant's knowledge there are no related cases in this court.

iv

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiff/Appellant CBAmerica requests oral argument, pursuant to Federal Rules of Appellate Procedure 34(a).  Oral Argument would assist this Court in reviewing the issues raised herein, specifically the standing of CBAmerica in consideration of the Religious Freedom Restoration Act and recent Supreme Court case law.  Oral argument could also assist this Court regarding the record herein.

# TABLE OF AUTHORITIES

**Cases**

*Am. Legal Found. v. F.C.C.,* 808 F.2d 84 (D.C. Cir. 1987). . . 16, 17, 18, 19, 21, 22

*Autocam Corp. v. Sebelius.* 730 F. 3d 618 ( Cir. 2013). . . . . . . . . . . . . . . . . . . 12

*Baker v. Carr*, 369 U.S. 186, 82 S. Ct. 691 (1962). . . . . . . . . . . . . . . . . . . . . . 17

*Bell Atlantic Corp. v. Twombly* 550 U.S. 544 (2007). . . . . . . . . . . . . . . . . . . . . 7

*Browning v. Clinton,* 292 F.3d 235 (D.C. Cir.2002). . . . . . . . . . . . . . . . . . . . . . 6

*Burwell v. Hobby Lobby Stores, Inc.,* ___ U.S. ___, 134 S. Ct. 2751
(2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4, 5, 7, 9, 10, 11, 12, 19, 22

*City of Houston Tx v. Dept. of HUD*, 24 F.3d 1421(D. C. Cir. 2004). . . . . . . . . . 15

*Conley v. Gibson,*  355 U.S. 41(1957). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Diamond v. Charles,* 476 U.S. 54, 106 S. Ct. 1697 (1986). . . . . . . . . . . . . . . . . 18

*Estate of Col–Monge v. Inner Peace Movement,*  524 F.3d 1341 (D.C.Cir. 2008). . 6

*Fund Democracy, LLC v. SEC*, 278 F.3d 21 (D.C. Cir. 2002). . . . . . . . . . . . 20, 22

*Gettman v. DEA*, 290 F.3d 430 (D.C. Cir. 2002). . . . . . . . . . . . . . . . . . . . . . 21, 22

*Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982). . . . . . . . . . . . . . . . . . . 23

*Herbert v. National Academy of Sciences* 974 F.2d 192 (D.C. Cir. 1992). . . . . . . 6

*Hunt v. Washington State Apple Advertising Commission,* 432 U.S. 333 (1977). . 17

*International Union, Etc. v. Brock,* 477 U.S. 274, 106 S.Ct. 2523 (1986). . . . 14, 17

*Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271 (D.C. Cir.1994). . . . . . . . . . . . . . . 7

*Nat'l Taxpayers Union, Inc. v. United States*, 68 F.3d 1428 (D.C. Cir. 1995). . . . 23

*Nat'l Treas. Emps. Union v. United States*, 101 F.3d 1423 (D.C. Cir. 1996). . . . . 23

*Ord v. District of Columbia,* 587 F.3d 1136 (D. C. Cir. 2009). . . . . . . . . . . . . . 14

*United States v. SCRAP,* 412 U.S. 669, 93 S.Ct. 2405 (1973). . . . . . . . . . . . . . 18

*Valley Forge Christian College v. Americans United*, 454 U.S. 464, 102 S. Ct. 752 (1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*Zunamon v. Brown*, 418 F.2d 883, 886 (8th Cir. 1969). . . . . . . . . . . . . . . . . . . 6

**Statutes**
U. S. Const. Amnd. I.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . viii, ix, 11,

1 U.S.C. § 1.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

5  U.S.C. § 702.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . viii

28 U.S.C. § 1331. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

RFRA 42 U.S.C. § 2000-bb . . . . . . . . . . . . . . . ii, vii, 1,7, 8, 9, 10, 11, 12, 13, 19

**Other**
*Acts* 9:3-9.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Acts* 12:3-19.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Federal Rules of Appellate Procedure 34(a).. . . . . . . . . . . . . . . . . . . . . . . v

Federal Rules of Civil Procedure 12. . . . . . . . . . . . . . . . . . . . . . . . . . . 6

## STATEMENT OF JURISDICTION

This is an appeal from the May 16, 2014. District Court's order granting the Secretary's motion to dismiss.  The district court had jurisdiction pursuant to 28 U.S.C. § 1331, 5 U.S.C. § 702, 42 U.S.C. § 2000-bb and the Establishment Clause of the First Amendment to the United States Constitution. Conservative Baptist Association of America filed a timely notice of appeal on June 23, 2014.  This Court has jurisdiction under 28 U.S.C. § 1291.

## RELEVANT STATUTES AND REGULATIONS

I.     The Religious Freedom Restoration Act, (RFRA) 42 U.S.C. 2000-bb, prohibits the government from substantially burdening a person's exercise of religion unless it is in furtherance of a compelling governmental interest and is the least restrictive means of furthering that compelling governmental interest.

II.     5 U.S.C. § 702 provides that:

A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of

legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party. The United States may be named as a defendant in any such action, and a judgment or decree may be entered against the United States: *Provided*, That any mandatory or injunctive decree shall specify the Federal officer or officers (by name or by title), and their successors in office, personally responsible for compliance.  Nothing herein (1) affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground; or (2) confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.

III.    The Establishment Clause of the First Amendment prohibits the government from making any law "respecting an establishment of religion, or prohibiting the free exercise thereof."

## STATEMENT OF THE ISSUES

I.      Whether CBAmerica has standing to raise a claim under the Religious

Freedom Restoration Act (RFRA) because they were exercising the free expression

of their religious beliefs within the scope of *Burwell v. Hobby Lobby Stores, Inc.,*

13-154, ___ U.S. ___, 134 S. Ct. 2751 (2014).

II.     Whether CBAmerica has standing to bring a declaratory judgment action.

III.    Whether CBAmerica has standing to raise a claim on behalf of members

Firtko and Klender (and consequently, whether Chaplains Firtko and Klender are

members of CBAmerica).

IV.     Whether CBAmerica has suffered an injury in fact.

## STATEMENT OF FACTS

Chaplain Firtko and Chaplain Klender, two ordained ministers endorsed by

and under the supervision of CBAmerica, entered the VA San Diego Healthcare

System's Clinical Pastoral Education (CPE) in the fall of 2012.  Complaint ¶5.  A.

5.[1]  The program was supervised by Ms. Nancy Dietsch, a Department of Veterans

Affairs employee.  Complaint ¶10.  A. 6.

During the CPE course, Dietsch repeatedly ordered Firtko not to quote

---

[1] A. _ refers to Appendix page number.

Scripture in the classroom or to pray in Jesus' name in public ceremonies. Complaint ¶s11-13. A. 6. When he or Chaplain Klender did so they were publicly reprimanded. Complaint ¶11-17, 21-22, 25. A. 6-9.

The CBAmerica Constitution and Statement of Faith is based on Scripture and the Bible is the basic foundation of their organization. A. 39-40. After several reprimands, Ms. Dietsch threatened to dismiss Chaplain Firtko from the CPE program, and ultimately placed him on six weeks probation. Complaint ¶28. A-10. Approximately one week later, Chaplain Firtko was notified in a letter that he had been dismissed from the CPE program effective March 1, 2013. Complaint ¶30. A-10. Chaplain Klender was also publicly admonished by Ms. Dietsch. He was criticized for his religious beliefs and ordered not to pray in Jesus' name, despite the fact that these actions represented the tenets and beliefs of the endorser CBAmerica. After repeated harassment and attacks on the CBAmerica core beliefs, Chaplain Klender eventually withdrew from the CPE program. Complaint ¶29. A. 10. Both chaplains complied at all times with the Declaration of Faith contained in the CBAmerica Constitution.

At all material times, Chaplain Klender was an active duty Naval officer. He was also under the religious supervision of CBAmerica. Ms. Dietsch made it clear

2

that the religious beliefs or religious expression consistent with CBAmerica's

Declaration of Faith were not tolerated within the CPE program.  Chaplain Firtko's

dismissal and Chaplain Klender's forced withdrawal or constructive discharge

were in direct reprisal for the religious expression of CBAmerica's core Principles.

Chaplain Firtko, Chaplain Klender and CBAmerica filed a formal complaint

against Ms. Dietsch for religious discrimination and violation of the Pastoral

Continuing Education Standards 101.1, 101.2, 101.4, and 101.5.  Plaintiff

CBAmerica thereafter filed a complaint concerning the violation of these

standards.  No response was ever received.   Complaint ¶31.  A. 10.

On July 19, 2013, CBAmerica, via counsel, made a request for remedial

action to the Secretary.  Complaint ¶32.  A. 10-11.  On October 15, 2013, that

action was denied, constituting final agency action.  The underlying suit was filed

on November 18, 2013.

CBAmerica filed the suit in the court below seeking declaratory and

injunctive relief to declare the religious discriminatory actions of the Secretary in

violation of the Constitution and laws of the United States and to enjoin further

discriminatory actions against CBAmerica chaplains who might be endorsed to

work within the VA System.  A. 4-22.  On May 16, 2014, the underlying case was

3

dismissed for lack of standing. A. 23. CBAmerica moved for summary reversal, which was denied.

## SUMMARY OF ARGUMENT

The court below granted the Secretary's motion to dismiss on the basis that CBAmerica lacked standing. Specifically, the district court found that CBAmerica failed to show it suffered any cognizable injury to bring the lawsuit on its own behalf. A 28-33. The court below also found that CBAmerica lacked association standing because Chaplains Firtko and Klender were not members of CBAmerica. A 34-36.

Not finding that CBAmerica has the standing to assert the rights of its Chaplains is akin to saying that Jesus did not have standing to assert the rights of the Apostles. Adopting this position would question whether Jesus could have intervened with Paul on the road to Damascus, *Acts* 9:3-9 or to free the Apostle Peter from prison. *Acts* 12:3-19. Like these two incidents, followers of Jesus were being persecuted for their beliefs. Here the earthly representative of Christ, CBAmerica, has the right to intervene to protect its ministers.

The recent Supreme Court decision of *Burwell v. Hobby Lobby Stores, Inc.,* 134 S. Ct. 2751 (2014), issued just six weeks after the court's decision, provides

guidance on a corporations standing to sue under the RFRA.  As explained below,

Chaplains Firtko and Klender are agents of CBAmerica and accordingly,

CBAmerica has standing to sue on its own behalf and for Firtko and Klender.  At a

minimum, this matter should be remanded to the district court to allow for

reconsideration in light of the recent *Burwell* decision.

CBAmerica has also suffered an injury in fact because it articulated a direct

conflict between the VA's conduct and CBAmerica's mission and purpose, as well

as a drain on CBAmerica's resources due to the VA's actions.

Chaplains Firtko and Klender are considered by CBAmerica to be members

of their organizations and actually act as the group's agents.  The district court

failed to recognize the indicia of membership of the two chaplains, depriving

CBAmerica of its cause.

The lower court also failed to recognize that CBAmerica has suffered an

injury-in-fact.  As will be explained in great detail below, a direct conflict exists

between the Secretary's conduct and the mission and Constitution of CBAmerica.

## ARGUMENT

### STANDARD OF REVIEW

This court reviews Motions to Dismiss *de novo,* applying the same standard of

5

review as that of the District Court.    *Estate of Col–Monge v. Inner Peace Movement,* 524 F.3d 1341, 1346 (D.C.Cir. 2008).  Dismissal under Federal Rule of Civil Procedure is improper unless the Complaint and the undisputed facts show that there is no doubt that jurisdiction is lacking.  All doubts on jurisdictional points must be resolved in favor of a plenary trial rather than dismissal at the pretrial stage. *Zunamon v. Brown*, 418 F.2d 883, 886 (8th Cir. 1969).   A dismissal of claims under Federal Rule of Civil Procedure 12(b)(6) is appropriate only if it appears beyond doubt that plaintiff  can prove no set of facts in support of their claim which would be entitle them to relief.  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  Rule 12(b)(1) motions are decided upon the complaint standing alone, the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Herbert v. National Academy of Sciences* 974 F.2d 192, 197, 297 U.S.App.D.C. 406, 411 (D.C. Cir. 1992).  In Rule 12(b)(6) cases, the complaint's factual allegations are accepted as true and the plaintiff is given the benefit of all inferences that can reasonably be drawn therefrom. *Browning v. Clinton,* 292 F.3d 235, 242 (D.C. Cir.2002).  A court should not accept inferences that are unsupported by the facts set out in the complaint, nor will it accept legal

6

conclusions cast in the form of factual allegations. *Kowal v. MCI Commc'ns Corp.,* 16 F.3d 1271, 1276 (D.C. Cir.1994). A claim requires a complaint with enough factual matter (taken as true) to establish the claim. *Bell Atlantic Corp. v. Twombly* 550 U.S. 544 (2007).

**I.     CBAmerica has standing to raise a claim under the Religious Freedom Restoration Act because they were exercising the free expression of their religious beliefs, through its members, within the scope of *Burwell v. Hobby Lobby Stores, Inc.*, 13-154, ___ U.S. ___, 134 S. Ct. 2751 (2014).**

The Supreme Court decision in *Burwell,* issued only six weeks following Judge Bates' decision, demonstrates the extent of a corporation's rights to protect those associated with the corporation. The Religious Freedom Restoration Act (RFRA), 42 U.S.C. 2000-bb, prohibits the government from substantially burdening a person's exercise of religion unless it is in furtherance of a compelling governmental interest and is the least restrictive means of furthering that compelling governmental interest. CBAmerica's Complaint sets forth a cause of action against the Secretary for burdening Chaplains Firtko and Klender's exercise of the religious principles contained in CB America's declaration of Faith. This constituted a violation of the RFRA.

Specifically, Nancy Dietsch's (Department of Veterans Affairs' employee and

supervisor of the VA San Diego Healthcare System's Clinical Pastoral Education

program), harassment and intolerance of Chaplains Firtko and Klender's core

religious beliefs caused the violation of the Religious Freedom Restoration Act, in

an attempt to censor the CBAmerica religious expression.

The court below ruled that CBAmerica lacked associational standing by

failing to identify members that were harmed by the actions of the VA and who

would have standing to sue in their own right.  Within six weeks of Judge Bates'

decision, the Supreme Court provided additional guidance on this issue through

*Burwell v. Hobby Lobby Stores, Inc.*, *supra*.  CBAmerica now brings this case to

the attention of the court to assist in demonstrating CBAmerica's standing in this

matter.

*Burwell* examined whether the Health and Human Services regulations

imposing the contraceptive mandate violated the Religious Freedom Restoration

Act and whether a corporation has standing to sue under the RFRA.  The Supreme

Court ruled that rights extended to corporations also protect the rights of the

people, including shareholders, officers and employees and those "*who are*

*associated with a corporation in one way or another.*"  *Burwell,* at 2768.

Accordingly, the court held that the HHS contraceptives mandate, as applied to for-

8

profit closely held corporations, substantially burdened the exercise of religion for purposes of the RFRA and did not satisfy the RFRA's least-restrictive means requirement.

The *Burwell* court essentially finds that a corporation has the ability to protect the rights of human individuals affiliated with the corporation. The court below erred in finding that the chaplains were not members of CBAmerica. The facts however, are clear. Chaplains Firtko and Klender are undoubtedly associated with CBAmerica. Although they do not lead, guide or finance activities of CBAmerica, they are important members of the organization itself. The chaplains are qualified, endorsed and supported by CBAmerica during the chaplaincy process. There is significance to this as CBAmerica dedicates substantial time and resources to train, qualify and support chaplains it endorses. Chaplains endorsed by CBAmerica are more than merely affiliated with or familiar to the organization. Rather, they are active and important members of CBAmerica, who in turn carry out the mission of CBAmerica. In exchange, the chaplains endorsed by CBAmerica are able to pursue their goals of seeking chaplaincy, while CBAmerica promotes its organization goals and mission by endorsing chaplains who will serve VA Health Facilities.

CBAmerica and the chaplains it endorses, including Chaplains Klender and Firtko share the same religious beliefs and these chaplains witness and testify in accordance with those beliefs. Thus, the religious freedom rights of CBAmerica <u>can only be protected</u>, by protecting the rights of their member chaplains. This is the core of this lawsuit. CBAmerica's rights are integrally intertwined with those of their agents - their endorsed Chaplains. By acting as agents of CBAmerica, Chaplains Firtko and Klender are carrying out the dictates of CBAmerica's religious beliefs and professing them to veterans within the Veterans Health System. Chaplains Firtko and Klender, like other chaplains endorsed by CBAmerica, represent CBAmerica and serve as apostles of the corporation's faith. They are the eyes, ears and mouths of the organization and CBAmerica cannot function without them. Consequently, when Chaplains Firtko and Klender were harassed in the chaplaincy program and told not to quote from scripture (and therefore not express their views), CBAmerica was also restricted. In other words, any curtailment of the individual Chaplains was, by extension, acted to suppress the religious beliefs of CBAmerica.

The *Burwell* Court noted that RFRA was enacted by Congress to provide broad protection for religious liberty. *Burwell,* at 2760, 2767. In doing so,

Congress included corporations within the RFRA's definition of "persons". *Id.* at 2768. Therefore, when rights, whether constitutional or statutory, are extended to corporations, the purpose is to protect those rights as though the corporation was an individual. *Id.*

The *Burwell* court illustrated this principle, "For example, extending Fourth Amendment protection to corporations protects the privacy interests of employees and others associated with the company". *Id.* Consequently, for purposes of the instant case, extending First Amendment religious rights to CBAmerica also protects the religious interests of those associated with it, including Chaplains Firtko and Klender. These Chaplains have a significant stake in the well-being of CBAmerica, as they depend on it for endorsement in the chaplaincy program. Conversely, CBAmerica has a significant stake in protecting their rights because they are agents of the Corporation who evangelize CBAmerica's dogma. They are specifically chosen for endorsement in part because of their sincerely held religious beliefs, which are in line with those of CBAmerica.

As discussed *supra.*, RFRA protects "a person's" exercise of religion, 42 U.S.C. §§ 2000bb-1(a), (b). Since RFRA itself does not itself define the term "person," the *Burwell* Court looked to the Dictionary Act, 1 U.S.C. § 1 and

11

determined that a "person" includes corporations, companies and associations. *Burwell,* 2768. The Court further noted that it has entertained RFRA and free-exercise claims brought by nonprofit corporations,[2] and the principle applies equally to for-profit corporations. *Id.* Accordingly, both Congress and the Supreme Court have made it clear that a corporation is capable of having standing under the RFRA. This interpretation of "person" abrogates the former position that a corporation was not a "person" capable of "religious exercise" as intended by the RFRA, previously set forth in *Autocam Corp. v. Sebelius.* 730 F. 3d 618 (6th Cir. 2013). The *Burwell* ruling has unambiguously created a path for corporations to exercise their religious rights and consequently, to protect those rights as necessary. As recognized by the *Burwell* court, RFRA was intended to apply to corporations.

    *Burwell* is especially relevant to this case as it concerns standing of a corporation under the RFRA. Because *Burwell* clarifies the standing requirement for the RFRA, the court below should be allowed an opportunity to reconsider its

---

[2] *Burwell* is especially important as CBAmerica is a non-profit corporation. The *Burwell* Court assumed and the government conceded that non-profits had standing under RFRA. *Gonzales v. O'Centro Espirita Beneficente Uniao de Vegetal,* 546 U.S. 418, 126 S.Ct. 1211, 163 L.Ed.2d 1017 (2006).

decision.  The religious rights of Chaplains Firtko and Klender are extensions of

the right of CBAmerica to express the tenets contained in their Declaration of

Faith.   Consequently, the assertion of rights under RFRA apply to the corporation

as well as the individual Chaplains.

## II.    CBAmerica has standing to bring forth a declaratory judgment action.

This suit includes a cause of action for declaratory judgment.  In many cases

a declaratory judgment case is unique because it anticipates harm rather than

complaining of actual harm.  Here the standing of CBAmerica is obvious as it

relates to the declaratory judgment and injunctive relief.  CBAmerica has spent and

will spend scarce resources provided by its members to certify and qualify

chaplains for the VA health system, only to have them stymied in an attempt to

move forward with CBAmerica's Declaration of Faith.  If they are not allowed to

seek relief in court, they will be forced to risk recurring discrimination against their

organizational religious doctrine.

This Court has analyzed this unique situation as it applies to standing,

finding that:

> if a plaintiff has been placed "between the Scylla of intentionally flouting
> state law and the Charybdis of forgoing what he believes to be
> constitutionally protected activity in order to avoid becoming enmeshed in a

13

criminal proceeding," he has suffered an injury sufficient to establish
standing to seek declaratory relief without "first expos[ing] himself to actual
arrest or prosecution."

*Ord v. District of Columbia,* 587 F.3d 1136, 1148, (D. C. Cir. 2009).

The Supreme Court has also held that associations may bring a suit for

declaratory relief to challenge agency action. *International Union, Etc. v. Brock,*

477 U.S. 274, 106 S.Ct. 2523, 91 L.Ed.2d 228 (1986). Consequently, CBAmerica

is not required to wait for additional harm to newly endorsed chaplains. It can

bring an action now to block that future harm.

Here, CBAmerica has a vested interest in the actions of the Secretary

because his actions may affect whether or not CBAmerica will continue to provide

chaplain services to the Department of Veterans Affairs consistent with their

beliefs. Here, judicial relief would halt the discriminatory actions of the Secretary,

and it would protect future CBAmerica chaplains in completion of the chaplaincy

program and in fulfilling CBAmerica's Declaration of Faith.

A favorable decision in this case will halt the discriminatory actions, declare

the actions of the Secretary patently illegal and protect future CBAmerica

chaplains from their mission to witness and testify in fulfillment of CBAmerica's

Declaration of Faith. Endorsed chaplains will be allowed to evangelize and

14

declare CBAmerica's core beliefs to veterans who welcome their ministry.

Further, favorable action will shield veterans with mainstream religious views from being isolated or force-fed radical views.  Favorable action will also enhance the Constitutionally protected mission of CBAmerica by allowing the organization to articulate their core beliefs via their endorsed chaplains. Additionally, it will restore both Chaplains Firtko and Klender to service, provide them with the appropriate CPE credit and allow them to conduct their ministerial duties in furtherance of CBAmerica's stated goals.

CBAmerica has shown that the future risk of harm is actual, imminent and ongoing. It is more than conjectural or hypothetical.  Accordingly, CBAmerica has standing to pursue a declaratory judgment and injunctive relief.  *City of Houston Tx v. Dept. of Housing and Urban Development*, 24 F.3d 1421, 1429 (D. C. Cir. 2004).

## III. CBAMERICA HAS ASSOCIATION STANDING TO RAISE THE CLAIMS OF MEMBER CHAPLAINS FIRTKO AND KLENDER

The court below ruled that CBAmerica lacked associational standing because Chaplains Firtko and Klender were not members of CBAmerica.  The court below held that CBAmerica had not carried its burden because it failed to

15

identify members that were harmed by the alleged actions of the VA and who

would have standing in their own right.  Specifically, the court ruled that there was

insufficient evidence that Chaplains Klender and Firtko were "members" of

CBAmerica, because they do not elect the leadership of CBAmerica, guide its

activities or finance those activities, based on the court's decision in *Am. Legal*

*Found. v. F.C.C.,* 808 F.2d 84 (D.C. Cir. 1987).

    As discussed herein however, Chaplains Firtko and Klender are members of

CBAmerica and they do play a role in guiding CBAmerica's activities.  For various

reasons, the circumstances of the instant case can be distinguished from those of

*Am. Legal Found. supra.,* relied upon by the court below.   First, the American

Legal Foundation had no members.  *Am. Legal Found.,* 808 F.2d at 88.  Its own

corporate charter prohibited it from having members.  *Id.*  Therefore, in its lawsuit,

the American Legal Foundation attempted to represent the interests of all members

of the public who regularly watched ABC News in order to challenge the FCC's

decision on its own behalf and on behalf of its "supporters."  *Id.*

    The *Am. Legal Found.* court notes that by limiting access to those who can

demonstrate "injury in fact", the standing doctrine "reflects a due regard for the

autonomy of those persons likely to be most directly affected by a judicial order."

*Am. Legal Found,* 808 F.2d at 88, (citing *Valley Forge,* 454 U.S. 464, 473, 102 S. Ct. 752, 759 (1982), *see also Baker v. Carr,* 369 U.S. 186, 204, 82 S. Ct. 691, 703, 7 L.Ed.2d 663 (1962).  As discussed herein, CBAmerica suffered a direct and palpable injury.  Additionally, the organization enjoys associational standing.

Courts recognize two different capacities under which an organization may seek standing: on their own behalf and on behalf of its members.  Even if an organization itself has suffered no "injury in fact", the organization may use associational standing, showing that [a] its members would otherwise have standing to sue in their own right; [b] the interests it seeks to protect are germane to the organization's purpose; and [c] neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.  *Am. Legal Found.,* 808 F.2d at 89, (citing *Hunt v. Washington State Apple Advertising Commission,* 432 U.S. 333, 342, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977), *see also International Union, UAW v. Brock,* 477 U.S. 274, 106 S.Ct. 2523, 91 L.Ed.2d 228 (1986).

As to the first prong of the *Am. Legal Found* test, Defendants conceded in the court below that the individual chaplains could have sued in their own right.

As to the second prong, the *Am. Legal Found.* court, in considering the issue

17

of the ABC News viewers' standing, discussed a principle of the standing doctrine, that "the decision to seek review must be placed 'in the hands of those who have a direct stake in the outcome,' … not … in the hands of 'concerned bystanders,' who will use it simply as a 'vehicle for the vindication of value interests.' " *Am. Legal Found,* 808 F.2d 84 at 91 (citing *Diamond v. Charles,* 476 U.S. 54, 106, S. Ct. 1697, 1703, 90 L.Ed.2d 48 (1986), quoting *Sierra Club,* 405 U.S. 727, 740, 92 S.Ct. 1361, 1368, and *United States v. SCRAP,* 412 U.S. 669, 687, 93 S.Ct. 2405, 2415, 37 L.Ed.2d 254 (1973)).

Here, Chaplains Firtko and Klender are far from "concerned bystanders" of CBAmerica's organization and activities. Rather, they are individuals who are an integral part of the organization's activities who assert the CBAmerica Doctrine of Faith. During the course of their endorsement and chaplaincy, selected chaplains such as Firtko and Klender, work closely with CBAmerica to promote shared religious beliefs. They cannot be compared to a general population such as news viewers or other similarly situated groups. Here the beliefs of the Chaplains are the same as CBAmerica and they share a common and direct stake in the outcome of this case. Here, the failure to recognize the claim will directly and negatively affect not just Chaplains Firtko and Klender, but the entire CBAmerica

organization, including current and future VA chaplains.  Here, unlike the general

news viewers in *American Legal Foundation* and similar cases,  there is a

significant association between the two chaplains and CBAmerica in this case

Comparing the instant case to *American Legal Foundation* is a comparison of

apples and oranges.

Moreover, the chaplains play a significant role in guiding CBAmerica's

activities in the field.  However, CBAmerica's efforts are thwarted by the

Secretary's actions, as the chaplains are now hampered in their ability to continue

their chaplaincy due to the discriminatory actions.  When CBAmerica commits to

qualifying and endorsing chaplains, such as Chaplains Firtko and Klender, it

spends a significant amount of time and money doing so.  They also assist the

chaplains as they represent CBAmerica in fulfilment of their Declaration of Faith.

Thus, the chaplains do play a critical role in CBAmerica's daily activities.

As discussed, *supra*, *Burwell v. Hobby Lobby Stores, Inc*. also provides

additional guidance in resolving Chaplains Firtko and Klender's membership status

with the corporation.  Although *Burwell* did not directly address what constituted a

"member" of a corporation, the court in examining a corporation's standing under

the RFRA, ruled that rights extended to corporations also protect the rights of the

people, including shareholders, officers and employees and those "who are associated with a corporation in one way or another."

The narrow view of membership ignores the possibility of any other members of a corporation who may not hold leadership positions, but who are equally important to the organization.  It is the rights of human individuals at issue.  These rights should not be more or less protected based on their position with the corporation or organization with which they are involved.  Chaplains Firtko and Klender are deeply involved with CBAmerica and serve to minister CBAmerica's religious beliefs.  Failing to acknowledge the chaplains' membership status based on an assumption that they don't hold leadership roles in CBAmerica ignores the rights of CBAmerica to protect their fundamental religious rights.

Further, the relationship between CBAmerica and Chaplains Klender and Firtko cannot be compared to other cases relied on by the court below.  The plaintiff organization in *Fund Democracy, LLC v. SEC*, 278 F.3d 21, 26-27 (D.C. Cir. 2002) lacked associational standing when it attempted to act on behalf of an informal consortium of mutual fund investors.  Unlike the uninvolved investors in Fund Democracy, LLC, the chaplains in this case were actively involved with CBAmerica's activities and mission. The chaplains worked as agents of

20

CBAmerica and were punished for affirmatively asserting the CBAmerica

Declaration of Faith.

Similar to *Am. Legal Found.*, the plaintiff magazine in *Gettman v. DEA*, 290

F.3d 430, 435 (D.C. Cir. 2002) lacked associational standing because the readers

and subscribers did not select leadership, guide activities or finance activities.  Like

the news viewers in *Am. Legal Found.*, the readers and subscribers were

insufficient for the magazine to claim associational standing.  Readers and

subscribers to a magazine are nothing more than exactly that.  They did not have a

relationship to the magazine itself other than reading and subscribing to it.  Here,

the chaplains do not merely read information disseminated by CBAmerica or

follow its faith. Rather, they strive to spread the religious doctrine of CBAmerica

as expressed in its Declaration of Faith.  They represent CBAmerica itself and

serve as examples of the Corporation's faith.  Once they are endorsed by

CBAmerica, their actions during the chaplaincy are a direct reflection of their

relationship with CBAmerica.

Based on the foregoing, the lower court overlooked factors in this case that

clearly indicate the chaplains' membership in CBAmerica. They simply cannot be

compared to the individuals the organizations tried to assert associational standing

for in cases such as *Am. Legal Found.*, *Gettman*, and *Fund Democracy, LLC*. Here,

the chaplains do guide the activities of CBAmerica with regard to qualification and

endorsement of their chaplaincy and they maintain an active and intricate

relationship with CBAmerica throughout the entire chaplaincy process. They

cannot be overlooked for purposes of associational standing in light of *Burwell* and

the special facts of this case.

As to the third prong of the *Am. Legal Found.* standard, it is not necessary

for Chaplains Firtko and Klender to actively participate in the litigation.  The facts

are well established and for purposes of this appeal must be accepted as true.  The

issues herein are legal issues that can be adequately advanced by CBAmerica.

Chaplains Firtko and Klender are witnesses rather than litigants and as discussed

herein, CBAmerica has an independent right of action.

## IV.    CBAMERICA HAS SUFFERED AN INJURY-IN-FACT

Judge Bates erred in finding that CBAmerica lacked standing to bring

suit on its own behalf because it has not suffered an injury-in-fact.  The court's

opinion asserted that to satisfy the first requirement (of standing, an injury-in-fact,

the organization must show "concrete and demonstrable injury to the organization's

activities - with [a] consequent drain on the organization's resources –

constitut[ing] ... more than simply a setback to the organization's abstract social interests." *Nat'l Taxpayers Union, Inc. v. United States*, 68 F.3d 1428, 1433 (D.C. Cir. 1995) (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378-79 (1982)).  Specifically, a plaintiff organization must satisfy two requirements.  First, "a direct conflict between the defendants' conduct and the organization's mission is necessary." *Nat'l Treas. Emps. Union v. United States*, 101 F.3d 1423, 1430 (D.C. Cir. 1996).  Second, the plaintiff organization must show a "consequent drain on the organization's resources," resulting from this direct conflict.  citing *Havens*, 455 U.S. at 379; *accord*, *Nat'l Taxpayers Union*, 68 F. 3d at 1433.

Here, the facts demonstrate there is a direct conflict between the defendant's conduct and CBAmerica's mission.  In its Constitution, CBAmerica sets forth its general purpose:

> For the glory of God CBA exists to serve, resource and represent our member regions. The Association shall collect and disburse funds, disseminate information, solicit and receive gifts direct or in trust, act as trustee for any such trusts, and acquire and own property – real or personal – as necessary or convenient.

CBAmerica Constitution at 2, see Ex. 1 to Pl.'s Opposition (ECF No. 10-1).

The phrase "serve, resource and represent" member regions encompasses specific activities not spelled out in the Constitution.  The fact that the CBAmerica

23

Constitution does not expressly state that it qualifies and endorses chaplains does not preclude the organization from doing so as a regular activity or from demonstrating a direct conflict therein.

To follow its Declaration of Faith and its mission, to serve its member regions, CBAmerica qualifies and endorses chaplains to serve in the military and within the VA system. This is an especially important task because without the endorsement, CBAmerica's ordained ministers would be unable to serve at VA Health facilities. Only after they are endorsed can chaplains serve in VA Hospitals and promote the CBAmerica Doctrine of Faith.

CBAmerica's mission has been significantly disrupted by the Secretary's actions. The continued discrimination and harassment against the CBAmerica endorsed chaplains has made it abundantly clear that chaplains must abandon the Declaration of Faith to successfully complete the chaplaincy process. The termination of Chaplains Firtko and Klender are stark examples of the Secretary's decision to impair and restrict CBAmerica's ministry.

This direct conflict between the VA's conduct and CBAmerica's mission is a concrete and demonstrable harm to CBAmerica. If the Secretary's policy is not invalidated, CBAmerica will not be able to carry out their organizational mission.

24

Absent the discrimination and harassment, Chaplains Firtko and Klender would have completed the VA program and their mission would not have been impaired.

In those cases where an organization alleges that a defendant's conduct has made the organization's activities more difficult, the presence of a direct conflict between the defendant's conduct and the organization's mission is necessary to establish standing. *Nat'l Treasury Employees Union v. U.S.*, 101 F.3d 1423, 1430 (1996). Here, it is evident that the VA's actions have made CBAmerica's endorsement process much more difficult. If the chaplains cannot complete the CPE program, they cannot serve in VA hospitals.

The facts of this case illustrate the direct conflict at play here - the chaplains are unable to complete the VA chaplaincy program unless they are willing to change their religious beliefs. The actions of the Secretary have made it clear to CBAmerica that their views would not be tolerated in the program, in violation of their religious freedom rights. Accordingly, unless the court requires the Secretary to end the discrimination and harassment against the chaplains' religious beliefs, chaplains endorsed by CBAmerica will be unable to complete the program. This limits the ability of CBAmerica to complete their ministry to veterans who share their beliefs or who wish to learn the teachings of the mainstream Christian faith.

Here, the Secretary has emphasized that the CBAmerica belief in scripture and divine inspiration is unwelcome in the VA system. These are core principles of the CBAmerica Declaration of Faith.  Restricting the right to express them is a direct injury to CBAmerica.

Additionally, CBAmerica has suffered an injury in fact by suffering a consequent drain on the organization's resources due to the actions of the Secretary.  As a direct result of the VA's conduct against Chaplains Klender and Firtko, CBAmerica has had less time to devote to its other core activities of disseminating information to its member regions, acting as trustee and managing property due to the time it has had to spend trying to resolve the conflict with the VA officials.   Here, CBAmerica experienced a drain on resources as the time and money spent on qualifying and endorsing the chaplains who later were terminated from the VA system.  As set forth herein, the process of qualification and endorsement
of a chaplain is a lengthy involved process.  When the chaplains' beliefs are struck down by the VA and their continuance in the program made impossible, the resources expended by CBAmerica have been wasted.

Additionally, CBAmerica was forced to pursue remedies for violation of the

26

C.P.E standards, taking time and resources away from its other endeavors.

Additional action taken in an attempt to resolve this situation has included filing a formal complaint against Ms. Dietsch with the Association for Clinical Pastoral Education, and a request for remedial to the Secretary, which was denied.

## CONCLUSION

Based on the foregoing, CBAmerica has standing to pursue an injury-in-fact caused by the actions of the Secretary and VA against Chaplains Klender and Firtko, members and agents of CBAmerica acting on behalf of CBAmerica.

Accordingly, this case should be reversed and remanded.

Respectfully Submitted,
//s// John B. Wells
John B. Wells
Attorney for Appellant
D. C Cir. #54096
P. O. Box 5235
Slidell, LA 70469-5235
769 Robert Blvd, Suite 201D
Slidell, LA 70458
985-641-1855
985-649-1536 (fax)

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 5500 words, excluding the parts of the brief exempted by Fed R. App. P. 32(a)(7)(B)(iii).

This brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using WordPerfect in font size 14 and style Times New Roman.

//s//  John W. Wells
John B. Wells
Attorney for Appellant CBAmerica

## CERTIFICATE OF SERVICE

I, John B, Wells, do hereby certify that I have this date served via the Court's EC/CMF system, a true and exact copy of this brief to the court and to counsel for Defendant this 1st day of December 2014.

//s// John B. Wells
John B. Wells

28